PILLSBURY WINTHROP SHAW PITTMAN LLP
AARON S. DYER (161798)
725 S. Figueroa St. Suite 3600
Los Angeles, CA 90017-5406
Telephone: (213) 488-7100; Facsimile: (213) 629-1033
Email: aaron.dyer@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
J. RYAN STASELL (307431)
11682 El Camino Real, Suite 200
San Diego, CA 92130
Telephone: (858) 509-4000; Facsimile: (858) 509-4010
Email: ryan.stasell@pillsburylaw.com

Attorneys for Defendant
VIVID FINANCIAL MANAGEMENT, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>JULIE ANNE DARRAH and VIVID FINANCIAL MANAGEMENT, INC.<br><br>Defendants. | Case No. 2:23-cv-08843-DSF-AGR<br><br>*Assigned to Hon. Dale S. Fischer*<br><br>**DEFENDANT VIVID FINANCIAL MANAGEMENT, INC.'S OPPOSITION TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR DEFAULT JUDGMENT**<br><br>Date: September 22, 2025<br>Time: 1:30 p.m.<br>Ctrm: 7D<br>Judge: Hon. Dale S. Fisher |

## I. INTRODUCTION

Defendant Vivid Financial Management, Inc. ("Vivid") does not contest the entry of default in this matter. Vivid does, however, oppose the scope of the relief sought by the Securities and Exchange Commission ("SEC"). The SEC seeks joint-and-several disgorgement of $2,247,330, prejudgment interest, and a civil penalty equal to the same amount. These remedies are neither warranted by the facts nor supported by law.

Almost the entirety of the conduct in this case did not involve Vivid, it involved the independent bad acts of defendant Julie Darrah ("Darrah"). And as would be expected with independent conduct, the evidence demonstrates that Vivid neither received nor benefitted from the funds misappropriated by Darrah. The SEC's own tracing analysis reflects only $2,240 went into Vivid accounts, constituting five of the over 11,000 transfers documented by the SEC. Moreover, over $850,000 of the misappropriations occurred after January 2022 – after Vivid had sold its assets, ceased operations, and no longer employed Darrah.

Imposing joint-and-several disgorgement under these circumstances would contravene the Supreme Court's decision in *Liu v. SEC*, 591 U.S. 71 (2020), which limits disgorgement to net profits that actually accrued to the defendant, and rules out joint and several liability for disgorgement where the illicit conduct was not jointly carried out. Here, the misappropriation of funds was not carried out jointly by Darrah and Vivid. *It was carried out by Darrah, acting only as Darrah, and acting only for Darrah.* Vivid – and its other three shareholders, were not part of the scheme. This is only further highlighted by the fact that more than a third of the funds were misappropriated after Vivid ceased operations entirely.

Finally, the civil penalty requested by the SEC is unjustified under *SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980), because Vivid is a defunct entity with no ongoing operations and no risk of future violations.

## II. BACKGROUND

Vivid was an SEC-registered investment adviser from 2015 to January 2022, when it sold substantially all its assets to Wealth Enhancement Group, LLC ("WEG"), and all Vivid's client relationships, employees, and operations were transferred to WEG. Dkt. No. 1, Complaint, ¶¶ 14-15. In January 2022, Vivid terminated its registration with the SEC (id.) and Vivid's shareholders dispersed into other pursuits, leaving the company a non-operating entity, whose only significant remaining asset was the right to receive earnout payments under the WEG transaction agreements.

Darrah, who had been Vivid's president and chief compliance officer, engaged in a fraudulent scheme between 2016 and 2023 that misappropriated approximately $2.25 million from clients into her personal bank accounts. Id., ¶¶ 14, 22, 96. Of the $2.25 million in misappropriated funds, $853,694 in transactions occurred after January 2022, when Darrah was no longer employed by Vivid. See Dkt. No. 7, Declaration of Jonathon Grobelski ("Grobelski Decl."), Exhibit Nos. 6 – 36.

Darrah concealed her actions by commingling the misappropriated client funds with funds relating to her other business ventures. Dkt. No. 1, Complaint, ¶ 96. Darrah then "used those commingled funds to buy and improve properties, pay her personal expenses, buy luxury vehicles, and buy and operate food-related businesses at a loss." Id. There are no allegations that the misappropriated funds were used to benefit Vivid, or any of the other three shareholders of Vivid.

## III. ARGUMENT

### A. No "Net Profits" Accrued to Vivid And Equity Forbids Shifting Darrah's Gains To Vivid Under *Liu*

Under the Supreme Court's decision in *Liu*, a district court may only order disgorgement in an amount that "does not exceed a wrongdoer's net profits and is awarded for victims." *Liu v. SEC*, 591 U.S. 71, 75 (2020). The purpose of this rule is to ensure defendants are held "liable to account for such profits only as have accrued

to themselves ... and not for those which have accrued to another, and in which they have no participation." *Id.* at 90. Imposing disgorgement liability on a wrongdoer for benefits that accrue to his affiliates through joint-and-several liability runs against the rule in favor of holding defendants individually liable and risks "transform[ing] any equitable profits-focused remedy into a penalty." *Id.* *Liu* did not "wade into all the circumstances where an equitable profits remedy might be punitive," but reasoned that imposing joint-and-several liability may not be appropriate where one party was a "mere passive recipient of profits," "finances were not commingled," the party "did not enjoy the fruits of the scheme," or "other circumstances would render a joint-and-several disgorgement order unjust." *Id*. at 91.

Here, the SEC claims it has "met its burden of establishing a reasonable approximation of [Vivid]'s and co-defendant Darrah's illicit gains" by asserting that Vivid and Darrah "received $2,247,330 in ill-gotten gains from approximately eight investors, as Darrah misappropriated this investor money, transferred it into her personal accounts, and commingled funds from these personal accounts with those of [Vivid] accounts." Dkt. 97-1, SEC's Motion for Default Judgment ("SEC Mot.") at 19:15-19. But the motion identifies no quantification of assets flowing to or remaining with Vivid, nor any profits retained by Vivid, as opposed to Darrah personally. To the contrary, the SEC's tracing analysis documented more than 11,000 transactions perpetrated by Darrah but identified only five totaling $2,240 flowing into Vivid accounts. Grobelski Decl. ¶¶ 35-37. Those nominal transfers do not reflect fraud proceeds and are not a reasonable approximation of profits attributable to Vivid. In fact, Darrah's scheme harmed Vivid by reducing Vivid's assets under management, depriving it of legitimate advisory fees rather than providing it with any profit.

Further, each of the considerations highlighted in *Liu* weighs against joint-and-several disgorgement here. *First*, Vivid was not a participant that enjoyed the "fruits of the scheme." The SEC's Complaint makes clear that the misappropriated client

funds were used for Darrah's personal gain and her other business ventures – they did not flow to Vivid (directly or indirectly).  See Dkt. No. 1, Complaint, ¶ 96. *Second*, the SEC has not shown commingling in any meaningful sense. Its motion offers the conclusory "commingled" label but points to no material balance, flow, or retained profit at Vivid, and does not tie any purported commingling to a profits figure that could be disgorged from Vivid as Vivid's own gain. *Third*, Vivid is, on the SEC's own showing, at most a passive, non-beneficiary of Darrah's conduct; the motion frames Darrah as the architect and beneficiary of the misappropriations, with no showing that Vivid realized profits from Darrah's wrongdoing. *Fourth*, imposing joint-and-several liability in these circumstances would be inequitable and penal, precisely what *Liu* forbids: it would compel Vivid to surrender Darrah's proceeds without evidence that those proceeds accrued to Vivid as net profits.

Because the SEC has not carried its burden to present a reasonable approximation of Vivid's profits (as opposed to Darrah's), and because the equitable limits announced in *Liu* squarely preclude transforming a profits-focused remedy into a penalty, the Court should deny disgorgement outright as to Vivid. The SEC's additional request for prejudgment interest, calculated at $169,181.18, rises or falls with disgorgement and—on this record—would only underscore the punitive character of relief against a defendant to whom no profit accrued.

### B. Any Disgorgement Must Exclude All Post-January 2022 Conduct Because Darrah Was No Longer Employed by Vivid

Should the Court reach any disgorgement amount against Vivid notwithstanding *Liu*, it should limit relief to conduct before January 2022, when Vivid's advisory business, employees, and client relationships had transitioned to WEG and Vivid had ceased operations. A corporation may be responsible for an officer's fraud only when undertaken within the scope of employment or with actual or apparent authority. *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th

Cir. 2015). After January 2022, Darrah was no longer acting as a Vivid employee and did not act with Vivid's authority; therefore, any post-January 2022 misappropriations—totaling $853,694 in transactions—cannot be imputed to Vivid. Even before that cut-off, the SEC has not identified profits accruing to Vivid; thus, if any disgorgement were considered at all, it must be strictly limited to profits actually shown to have accrued to Vivid during the pre-January 2022 period and supported by competent tracing tied to Vivid—something the current motion does not supply.

        **C.**        **Civil Penalties Are Not Warranted**

The SEC also seeks a civil penalty of $2,247,330, invoking the statutory authority for third-tier penalties. That request disregards the controlling factors set forth in *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). The first two factors—scienter and recurrence—may weigh in the SEC's favor, since Darrah acted with intent and engaged in repeated misconduct. However, Darrah's scienter is at most imputed to Vivid only for a portion of the conduct, and her concealment of the scheme demonstrates that Vivid and its three other shareholders did not benefit from Darrah's scheme.

The remaining factors—recognition of wrongful conduct, likelihood of future violations, and sincerity of assurances against violations—overwhelmingly weigh against the imposition of a penalty. Vivid has appeared and acknowledged the wrongful nature of Darrah's conduct. The company is defunct, has not operated for more than three years, and will never again function as a registered investment adviser. There is no realistic prospect of future violations.

On balance, the *Murphy* factors do not support a penalty. The purpose of civil penalties is deterrence, not punishment. Imposing a multimillion-dollar penalty on a corporation with no ongoing operations would serve no remedial purpose and would operate only as punishment, contrary to statutory design and equitable principles.

## IV. CONCLUSION

For the foregoing reasons, Vivid respectfully requests that the Court deny the SEC's request for joint-and-several disgorgement of $2,247,330 and prejudgment interest. Vivid further requests that the Court deny the SEC's request for a civil penalty in its entirety.

Dated: August 22, 2025            PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ J. Ryan Stasell*
Aaron S. Dyer
J. Ryan Stasell

Counsel for Defendant
Vivid Financial Management, Inc.